FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 JUN -3 AM 10: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| VERONICA WILLIAMS, MARGIE HOPSON, VICKIE LYNN COTTON, CONSTICA LOGWOOD, PAUL HUDSON, and PAUL ALEXANDER, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 99-RRA-0717-S |
| WAFFLE HOUSE, INC., and TREETOP, INC., | ) ) ) | |
| Defendants. | ) ) | |

ENTERED
JUN 0 3 2002

## MEMORANDUM OF OPINION

The plaintiffs' federal claims have been dismissed. Now before the court for disposition is defendant Treetop's motion for summary judgment on the plaintiffs' state law claims of outrageous conduct and negligent supervision.[1] The defendant has filed a brief in support of its motion, and the plaintiff has filed a brief in opposition. The relevant facts are set out in the Memorandum of Opinion entered April 15, 2002, and will not be repeated in toto here. As always, the facts favoring the plaintiffs will be taken as true, but the evidence must be capable of supporting the plaintiffs' claims.

---

[1] Defendant Waffle House, Inc. has been dismissed as a party.

### Tort of Outrageous Conduct

The plaintiffs seek to hold the defendant liable for the actions of one of its waitresses, Brenda Barnett. The defendant contends that the evidence is insufficient, as a matter of law, to establish that Barnett's behavior should be imputed to the defendant. The defendant further contends that the evidence falls short of satisfying two of the elements of the tort of outrage: that the conduct in question was extreme and outrageous, and that the plaintiffs suffered severe distress as a result. In their current brief, the plaintiffs do not argue their tort of outrage claim.[2]

Determinations of the sufficiency of the evidence to support a finding that an employee's acts were within the scope of her employment, and a finding of the tort of outrageous conduct, require a case-by-case consideration of the evidence. Therefore, in determining whether there is sufficient summary judgment evidence for the plaintiffs to prevail on their outrageous conduct claim, it is instructive to consider the facts in cases where such determinations have been made.

Law

1. *When an employer is liable for the acts of an employee*

The Alabama Supreme Court has set out the requirements for holding an employer liable for the intentional acts of an employee:

---

[2] In the plaintiffs' original brief, in the "Outrage" section, they state, "Plaintiffs have submitted sufficient facts to reveal that they were severely distressed due to the actions of waitress Barnett and her supervisor, who simply gave plaintiffs an 800 number; and that this activity is not tolerable in today's civilized society."

> For [an employer] to become liable for [the] intentional torts of its agent, the plaintiff[ ] must offer evidence that [1] the agent's wrongful acts were in the line and scope of his employment; or [2] that the acts were in furtherance of the business of [the employer]; or [3] that [the employer] participated in, authorized, or ratified the wrongful acts." *Joyner v. AAA Cooper Transportation*, 477 So.2d 364, 365 (Ala.1985). The employer is vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or for acts done for the furtherance of the employer's interest. The employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or ratifies the employee's conduct after it learns of the action.

*Potts v. BE&K Construction Company*, 604 So.2d 398 (Ala. 1992).

An Ohio state court explained the difference between acts done within the scope of one's employment, and those done for purely malicious reasons unconnected to the employer's business:

> It is clear that a principal shall be liable for the tortious acts of his agent only when such acts were done in the execution of his principal's business and within the scope of the agent's employment. *See King v. Magaw* (1957), 104 Ohio App. 469, 471-472 [5 O.O.2d 162], 150 N.E.2d 91. *See, also, Combs v. Kobacker Stores* (1953), 65 Ohio Law Abs. 326, 114 N.E.2d 447, and *Rouda v. Lowry & Goebel Co.* (1917), 9 Ohio App. 91. Where an act has no relation to the conduct of the master's business, it may not be argued that the servant was acting upon the scope of his authority. *See Longona v. Bd. of Liquor Control* (App. 1958), 6 O.O.2d 417, 154 N.E.2d 453. There is no presumption that the wrongful act of the agent was the act of the principal; authority to do the act must be demonstrated, or ratification of the act by the principal shown. Where the tort consists of a wilful and malicious act, as here, it is not generally considered within the scope of the agent's employment. *Southeastern Greyhound Lines v. Harden's Admx.* (1940), 281 Ky. 345, 136 S.W.2d 42; *John v. Lococo* (1934), 256 Ky. 607, 76 S.W.2d 897. One authority has expressed the rule as follows:
>> The principal or master, ordinarily, is not liable for the willful and malicious torts of the subordinate, if the act is done for no other purpose than to gratify the subordinate's ill will against the person injured, for such assault is a departure from the employment. But if the act is within the scope of the employment, the fact that it may have been done maliciously and willfully does not affect the superior's liability.
> Ohio Jurisprudence 3d (1978), Agency, Section 155. *See, also*, 57 Corpus Juris Secundum (1948), Master & Servant, Section 575.

-3-

> The rule is illustrated by a number of cases, a few of which may be cited as representative. Thus, in *Vrabel v. Acri* (1952), 156 Ohio St. 467 [46 O.O. 387], 103 N.E.2d 564, the court applied the general rule of nonliability in the case of an individual left in charge of a bar who drew a gun, shooting one patron and physically assaulting the plaintiff, stating at pages 473-474, 103 N.E.2d 564:
>
>> The wilful and malicious attack by Michael Acri upon the plaintiff in the Acri Café cannot reasonably be said to have come within the scope of the business of operating the café, so as to have rendered the absent defendant . . . accountable.
>>
>> Since the liability of one partner or of one engaged in a joint enterprise for the acts of his associates is founded upon principles of agency, the statement is in point that an intentional and wilful attack committed by an agent or employee, to vent his own spleen and malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor.
>
> *Id.* at 473-474, 103 N.E.2d 564. *See, also, Little Miami Co. v. Wetmore* (1869), 19 Ohio St. 110.
>
> To similar effect is the decision in *Fisher v. Hering* (1948), 88 Ohio App. 107 [44 O.O. 79], 97 N.E.2d 553, where the trial court was held properly to have directed a verdict for the defendant employer of a waitress who struck a patron of the restaurant who accused her of short-changing customers, since the waitress was not as a matter of law acting within the scope of her employment in assaulting a patron.
>
> The other side of the coin may be illustrated by the decision in *Kindberg v. C.I.T. Corp.* (App. 1940), 35 Ohio Law Abs. 523, 41 N.E. 1021, where the defendant finance company instructed its agent to haul away the defaulting plaintiff's car notwithstanding the plaintiff's efforts to prevent him from doing so, and where the agent promptly assaulted the plaintiff who was resisting the repossession. The court held that the issue of the agent acting within the scope of his employment was properly submitted to the jury, and a judgment for the plaintiff was affirmed. *See, also, Blakely v. Greer* (1905), 18 Ohio C.C. 33, 7 Ohio C.C. (N.S.) 169, *affirmed,* without opinion, 76 Ohio St. 595, 81 N.E. 1197.

*Finley v. Schuett*, 8 Ohio App. 3d 38, 455 N.E.2d 1324, 1325-26 (Ohio Ct. App. 1982).

In *Odom v. Hubeny, Inc.*, 345 S.E.2d 886 (Ga. App. 1986), a Georgia case, a waitress asked the plaintiffs to leave for conduct she deemed improper. When they refused to leave, the waitress called the police. The waitress then pulled one of the plaintiffs out of the booth, and grabbed the other by her hair, punched her several times in the face, and poured a pot of Sanka

over her back. Because the waitress had been authorized, in the manager's absence, to ask a troublesome customer to leave, and to call the police if the customer refused to leave, the court held there was an issue of fact as to whether the waitress had acted within the scope of her employment.

In *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241 (11th Cir. 2001), a white cook stated that he was not going to serve any "niggers" and they were going to have to get out.[3] The cook called the police, who asked the plaintiffs to leave. The cook turned off the lights. After the plaintiffs left, the lights were turned back on and business resumed. It was held that the evidence was sufficient to support a finding that the cook was acting within the scope of his employment because he

> identified himself as a Waffle House employee when he called the police, and he told the responding officer that he was in charge. [The cook] testified that he believed he was doing his job when he called the police. He also testified that he had to handle the situation because no manager was present at Waffle House that night.

*Id.* at 1247.

In a Louisiana case, *Terral v. Waffle House*, 684 So.2d 1165 (La. App. 1 Cir. 1996), a waitress accidentally dropped a glass sugar container, which fell to the floor, shattered, and injured the plaintiff. The waitress had acted within the scope of her employment.

---

[3] There was evidence that the plaintiffs were misbehaving.

In a Virginia state court case involving an assault and battery, *Williams v. Dowell and Pizza Hut of America, Inc.*, No. LX-725-3, 1994 L 1031277, at *2 (Va. Cir. Ct. July 25, 1994), the court stated that "where an assault and battery is made by an employee as the result of an argument with a patron, in order to determine whether the assault and battery was within the scope of the employee's employment, one must look to the cause of the argument." *Id.* In this case, patrons at a Pizza Hut restaurant claimed they were not being seated because they were black. When one of the plaintiffs attempted to complain to the manager, the waitress allegedly said, "You niggers think you can get away with anything," and then proceeded to attack one of the plaintiffs by stabbing her with a pencil and hitting all parts of her body. The court stated that the waitress' statement "evinces a racial bias that could not have been connected in any way with Pizza Hut's business, much less performed in furtherance of Pizza Hut's business." The court went on to hold that "although [the waitress] allegedly uttered racial slurs, it can be inferred that the argument between [the waitress and the plaintiff] which resulted in the [the waitress'] assaulting and battering [the plaintiff] arose from a dispute concerning [the waitress'] seating and serving of the plaintiffs as restaurant patrons. *Id.*

Another Georgia case held that a bar waitress, who let patrons out the back door and onto the loading dock, and who, in hugging, caused one of the patrons to fall off the loading

dock, was acting on purely personal motives and her employer could not be held liable. *Morrison v. Anderson*, 471 S.E.2d 329 (Ga. App. 1996).

In a Michigan decision, Waitress Tippens dropped a "tray of dishes on plaintiff as Tippens approached Martin in the aisle way of the dining area, telling Martin not to disrespect' her." *Ryther v. OCB Restaurant Co.*, No. 229013, 2002 WL 865782, at *2 (Mich. Ct. App. April 26, 2002.) A fight then broke out between the waitress and Martin, during which the waitress grabbed the plaintiff, either as a shield or to get the plaintiff out of the way. It was held that the employer was not liable as the actions of this waitress exceeded the scope of her employment.

*2. Elements of the tort of outrage*

In Alabama,

> To establish the tort of outrage, the plaintiff must show that (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe. *Harris v. McDavid*, 553 So.2d 567 (Ala.1989). The conduct alleged must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 570; citing *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala.1980).

*Shepherd v. Summit Management Company, Inc.*, 726 So.2d 686, 694 (Ala Civ. App. 1998). A plaintiff must not merely suffer distress; the distress must be "so severe that no reasonable person could be expected to endure it." *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980).

Without extreme suffering, a defendant is due summary judgment *regardless of his conduct. Williams v. A. L. Williams & Associates, Inc.,* 555 So.2d 121, 125 (Ala. 1989).

In *Shepherd v. Summit Management Company,* a case involving racial slurs, the Alabama court addressed the question of the sufficiency of the evidence. In this case, the plaintiff performed housekeeping duties for apartment complexes. Following a written warning concerning her attitude and work performance, the plaintiff asked the maintenance supervisor what she was supposed to do in a unit that was to be cleaned by a contract cleaner. The supervisor replied, "That's why I don't like niggers." When the plaintiff reported that the maintenance supervisor had made comments concerning her race, and stated that she did not want to be treated like a slave, she was told, "Sometimes you have to be treated like slaves." *Id.* at 689-690. The court held that the evidence was insufficient to support an outrage claim.

Discussion

*1. Barnett's acts were not within the scope of her employment or in furtherance of the defendant's business*[4]

Barnett stated that she was not going to wait on "niggers" and for the plaintiffs not to be seated in her section. Barnett did not in fact serve the plaintiffs who were seated in her section. It is concluded that Barnett's actions were not within the scope of her employment, and

---

[4] Clearly, the defendant did not participate in, authorize, or ratify the actions of Waitress Barnett.

therefore should not be imputed to the defendant. The defendant's sole business was seating customers, taking their food and drink orders, returning with their food and drinks, and treating them courteously so they would return. In Barnett's statements, and her refusal to wait on the plaintiffs who were seated in her booth, she was acting directly contrary to her employer's interests and in accordance only with her own personal racial bias. Moreover, if Barnett's actions could be attributed to the defendant, the plaintiffs still could not prevail because the evidence falls short of establishing the tort of outrage in the following two respects.

2. *The events at the Hoover Waffle House did not rise to the level of "outrageous" conduct*

The evidence shows that Barnett used the word "nigger" two times --- once as Paul Alexander was on his way to the restroom and once as he was returning --- and said that she did not want the plaintiffs seated in her section. Although it appears that Barnett did not mind Alexander hearing her remarks, she was not actually engaged in a conversation with him when she made them. Of the six plaintiffs, only Alexander heard Barnett state that she would not wait on "niggers." While at the restaurant, Alexander told only Veronica Williams what he had heard. It is opined that Barnett's utterances, and her failure to wait on these plaintiffs, did not rise to the level required to establish the tort of outrageous conduct. Even if they did, it is further opined that it would be improper, in evaluating this tort, not to consider as well the other, positive events the plaintiffs experienced at the Hoover restaurant. Not only did Waitress

-9-

Hilliard wait on the plaintiffs seated in the booth in her section, she apologized to the plaintiffs in Barnett's booth for the delay, offered to get drinks for the two children, and did take drinks to the children after the plaintiffs went outside. Even though the manager, David Rogers, was not informed by any of the plaintiffs of Barnett's racial statements, he stated that he was going to determine why Barnett had not been to the plaintiffs' table she was supposed to serve. Rogers also gave the plaintiffs a telephone number they could call to report their complaint of poor service. Hilliard's and Rogers' actions softened and offset Barnett's behavior.

The plaintiffs' experience with the defendant after they left the Hoover restaurant were positive. The plaintiffs went to another Waffle House in Vestavia, where their complaints were listened to sympathetically. The next day Williams called the number Rogers gave her, and she talked to a Mr. Ezell. The day after that, Ezell called Williams and told her that Barnett had been discharged. Except for Barnett, everyone with whom the plaintiffs dealt were as accommodating as they could be.

### 3. *The distress requirement has not been met*

Additionally, the evidence cannot satisfy the great distress requirement of this tort. As previously stated, only Alexander heard Barnett's comments, and while at the restaurant he told only one person, Veronica Williams, what he heard. Neither Alexander nor Williams was sufficiently upset to tell the other plaintiffs, to complain, or to leave the restaurant. It was not

until later that night at the home of one of the plaintiffs that Alexander informed Hopson, Cotton, Logwood, and Hudson of Barnett's remarks. Additionally, when the plaintiffs put down on paper the events of that night in what they called their "Group Statement," they did not even mention Barnett's comments. Further, the actions of Hilliard and Rogers must have had an ameliorating effect on any discomfort caused by Barnett's actions. Finally, there is no evidence that, as a result of their experience at the Hoover Waffle House, the plaintiffs experienced sleeplessness, depression, or other manifestations of distress.

### Negligent Supervision

The plaintiff relies heavily on the statement of Waitress Mary Gerve of the Vestavia Waffle House, who did not witness any of the acts in controversy, to establish that the defendant was or should have been aware of Barnett's alleged prior mistreatment of black customers. The defendant's objections to this statement are well-taken. Gerve's statement is unsworn, vague, and contains hearsay. The plaintiffs simply are unable to point to any evidence which could support a finding that the defendant knew or should have known that Barnett was not only hostile to black patrons, but that she would act on that hostility by insulting or refusing to serve them. Additionally, although her behavior was clearly inappropriate and worthy of condemnation, the

-11-

plaintiffs have not argued or produced evidence showing that Barnett committed a tort against them.[5]

### Decision

With respect to the tort of outrage claim, it is decided (1) that Barnett's actions were not within the scope of her employment or done in furtherance of the defendant's business, (2) that even if Barnett's actions were within the scope of her employment or done in furtherance of the defendant's business, the conduct in question falls short of the extreme and outrageous standard of this tort, and (3) that even if Barnett's actions were within the scope of her employment or done in the furtherance of the defendant's business and the conduct in question met the extreme and outrageous standard, the plaintiffs have not suffered the requisite distress. With respect to the tort of negligent supervision claim, the evidence is insufficient to support a finding for the plaintiff.

Wherefore, the defendant's motion for summary judgment on the plaintiffs' state law claims is due to be granted and those claims dismissed. An order in accordance with this

---

[5] In dismissing the federal claims, it was concluded that the defendant did not refuse to serve the plaintiffs.

memorandum of opinion will be entered.

DONE this 31st day of May, 2002.

Robert R. Armstrong, Jr.
United States Magistrate Judge